Charles A. ADCOCK, Plaintiff–Appellant,

v.

NEWTEC, INC., Respondent–Respondent.

No. 70103.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 17, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 5, 1997.

Application to Transfer Denied
March 25, 1997.

Seigel & Wolff, P.C., Charles A. Seigel, III, Michael A. Wolff, St. Louis, for plaintiff–appellant.

Lewis, Rice & Fingersh, L.C., Curtis C. Calloway, St. Louis, for respondent–respondent.

KAROHL, Judge.

Former employee, Charles Adcock, appeals from; (1) a judgment granting summary judgment in favor of defendant-employer, Newtec, Inc. (Newtec) on his claim of damages for wrongful discharge; and, (2) dismissal of his alternative claim for wrongful failure to renew his employment contract. The trial court found: (1) Adcock was a contract employee, thus, not entitled to recover on a claim of wrongful discharge; and, (2) the allegations of failure to renew a contract did not state a cause of action.

Newtec employed Adcock in October 1989 as vice president of sales. In his verified memorandum in opposition to Newtec's motion for summary judgment, Adcock asserted that he was an at-will employee. However, he testified in a deposition that Exhibit A, an "unexecuted" copy of an agreement, governed the terms and conditions of his employment with Newtec. Newtec's copy, Exhibit A, was signed by an employee of Newtec. It was not signed by Adcock. During a deposition Adcock was asked, "It is your recollection that both parties signed [the agreement] at one point or another; is that right?" Adcock answered, "Right, correct." Adcock also testified the agreement provided three years of guaranteed employment initially and guaranteed employment for one year periods thereafter unless the contract was terminated by one of the parties. This testimony is inconsistent with his contention he must be judged as an at-will employee. The agreement provided:

3. *Term of Agreement.* This Agreement shall commence October *9*, 1989, and continue in full force and effect until October *9*, 1992. Unless terminated as described below, this Agreement shall continue in full force and effect from year to year thereafter unless either party terminates the Agreement by giving notice to the other at

least six (6) months before the expiration of the then existing term.

■ Adcock alleged in his petition that his employment relationship was terminated because he (1) refused to authorize salary termination payments, based on false invoices, for a discharged employee; and, (2) reported the false invoicing activity to other Newtec personnel. Missouri recognizes a wrongful discharge cause of action under a public policy exception to the at-will employment doctrine. *Shawcross v. Pyro Products, Inc.,* 916 S.W.2d 342, 343 (Mo.App. E.D.1995). There are four categories of public policy exception cases: (1) discharge of an employee because of his or her refusal to perform an illegal act; (2) discharge of employee because he or she reported a violation of law or public policy by their employers or fellow employees; (3) discharge of employee for actions which sound public policy would encourage; i.e., acceptance of jury duty position and seeking public office; and, (4) discharge of employee for filing a worker's compensation claim. *Clark v. Beverly Enterprises–Missouri,* 872 S.W.2d 522, 525 (Mo.App. W.D.1994). Adcock's claim of wrongful discharge falls under the first two categories.

In the fall of 1992, Newtec hired a temporary secretary from RemedyTemp, Inc. to work with Adcock. Adcock, displeased with the secretary's work, fired her the Monday after Thanksgiving. She was to work for one week (40 hours) after receiving notice of termination. She only worked 21 hours. Adcock refused to approve payment for 40 hours. Thomas Oleksy, the president of Newtec, approved the payment. Adcock sent a note, dated December 29, 1992, to a fellow employee questioning the validity of time sheets submitted for the secretary and expressing his reservations for paying a secretary for hours she did not work. On March 7, 1994, Oleksy gave Adcock written notice of his termination in accordance with the employment agreement. Newtec met every contract obligation until the date of Adcock's termination on October 9, 1994. Adcock was not required to work but was paid his salary and benefits.

■ Adcock argues the trial court erred in granting summary judgment in favor of Newtec on his claim of wrongful discharge because the discharge violated a clear mandate of public policy. Adcock is protected by this argument only if he was a discharged at-will employee. *See Luethans v. Washington University,* 894 S.W.2d 169, 172 (Mo.banc 1995). He now argues a genuine issue of material fact existed as to whether his employment relationship with Newtec was at-will or contractual.

Adcock contends the term of the agreement was not certain because "[i]f no notice of termination was given by either party, the agreement would have continued *indefinitely.*" He argues he must be treated as an at-will employee because his employment was for an indefinite term.

■ An essential element to an employment contract is a statement of duration. *Id.* "Without a statement of duration, an employment at will is created which is terminable at any time by either party with no liability for breach of contract." *Id. citing McCoy v. Spelman Memorial Hospital,* 845 S.W.2d 727 (Mo.App.1993). Here, the employment agreement contained provisions defining duration. It called for an initial three year employment relationship, with a series of one-year extensions thereafter, unless either party gave timely notice of an intent not to renew. These provisions were sufficient to meet the requirement to define duration. The summary judgment facts support a finding Adcock was a contract employee who was discharged in accord with the cancellation terms of the employment agreement and fully compensated. He sustained no damages. He has no cause of action for wrongful discharge. We affirm summary judgment for Newtec on Adcock's wrongful discharge claim.

■ Adcock's other point is the trial court erred in granting Newtec's motion to dismiss his alternative claim for wrongful failure to renew a contract in violation of a clear mandate of public policy. In *Luethans,* the Missouri Supreme Court stated "[w]hether there ... may exist liability for a 'wrongful' failure to renew a contract or what types of damages may be recovered for a breach of contract in a 'whistleblower' situation are ques-

tions that remain open." *Luethans*, 894 S.W.2d at 172. The questions recognized in *Luethans* remain open. We need not decide them in this case. First, this is not a whistleblower case. "Whistleblowers" are employees who are discharged for reporting illegal or unethical conduct to the proper authorities. Here, Adcock never reported any illegal or unethical conduct to the proper authorities and no such conduct occurred. Adcock has never reported misconduct to law enforcement authorities or employer security persons. He merely wrote a note to a fellow employee questioning the wisdom of paying a secretary for hours she did not work. If Adcock was directed to approve false time sheets he did not follow the direction. The president of Newtec approved the payment of a week's wages, an entirely lawful act. Second, Adcock had no damages. He was given six months notice before the end of an existing one-year extension of the agreement and Newtec satisfied all of its obligations. If Adcock had a claim for breach of contract he has not asserted that cause of action. The agreement did not include provisions requiring renewal of the contract, and it was terminated according to its terms.

The question of whether, on different facts, there may be a cause of action for "wrongful" failure to renew a contract remains an open question. We hold the trial court properly dismissed Adcock's claim for "wrongful" failure to renew a contract because the factual allegations did not state a claim upon which relief can be granted. We affirm.

RHODES RUSSELL, P.J., and SIMON, J., concur.