131 F.Supp.2d 1140 (2001)
Greta HAYNES-WILKINSON, Plaintiff,
v.
BARNES-JEWISH HOSPITAL, Defendant.
No. 4:00CV1139 MLM.
United States District Court, E.D. Missouri, Eastern Division.
January 18, 2001.
*1141 Peggy Hardge-Harris, Hardge-Harris Law Office, St. Louis, MO, for Greta Haynes-Wilkinson, plaintiffs.
Dennis G. Collins, Partner, Michael J. Luna, Greensfelder and Hemker, Daniel J. Doetzel, Bobroff and Hesse, St. Louis, MO, for Barnes-Jewish Hospital, a Nonprofit Missouri Corporation dba Barnes Extended Care at Clayton, defendants.

MEMORANDUM AND ORDER
MEDLER, United States Magistrate Judge.
Before this Court is Defendant Barnes-Jewish Hospital's Motion to Dismiss or in the Alternative for Summary Judgment. The parties have consented to the jurisdiction of the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated in this Memorandum and Order, Defendant's Motion is granted in part and denied in part.

I. BACKGROUND
Plaintiff originally filed suit against her former employer, Defendant Barnes-Jewish Hospital on September 12, 1997 (Case No. 4:97CV01899MLM). Her Complaint included counts alleging race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, and violation of the Missouri Human Rights Act, R.S.Mo. § 213.010 et seq., all stemming from her allegation that Defendant terminated her, failed to promote her, and subjected her to different terms and conditions of employment based on her race. Plaintiff voluntarily dismissed that action without prejudice on July 14, 1999.
Plaintiff re-filed this case on July 14, 2000. Her revised four-count Complaint includes Count I (42 U.S.C. § 1981), Count II (Title VII), Count III (R.S.Mo. § 213.010 et seq.), and Count IV (state law libel). Specifically, Plaintiff's libel claim is based upon statements made by Defendant in a letter regarding Report of Certain Disciplinary Actions Pursuant to Mo.Rev. Stat. 383.130 and a report entitled "Confidential and Privileged Peer Review Report ... Report of Final Action" filed with the Missouri State Board of Nursing in March 1996, which Plaintiff attached to her Complaint as Exhibit 1.. The report details an incident involving Plaintiff and a patient under her care, concludes that Plaintiff was "negligent in her actions," and reports *1142 that management was "justified in the decision to terminate [Plaintiff] for neglect which causes injury to a patient.'"' Id.
Defendant has filed a Motion to Dismiss or in the Alternative for Summary Judgment with respect to all of Plaintiff's claims. Because the Court's decision involves matters within the pleadings (including Exhibit 1), the Court will treat Defendant's Motion as one to dismiss.

II. APPLICABLE STANDARDS
A court may dismiss a cause of action for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir.1993) (a motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support her claim." Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations). The Court must review the complaint most favorably to the plaintiff and take all well-pleaded allegations as true to determine whether the plaintiff is entitled to relief. Conley, 355 U.S. at 45-46, 78 S.Ct. 99.

III. DISCUSSION

A. Statute of Limitations
Defendant contends that Counts II and III in Plaintiff's Complaint are barred by the statute of limitations. In her response, Plaintiff stated that she does not oppose dismissal of these claims on those grounds. Accordingly, the Court will dismiss Counts II and III.

B. 42 U.S.C. § 1981
42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." BJC asserts that because Plaintiff was an at-will employee, she cannot maintain a cause of action under § 1981.
The Eighth Circuit has not yet addressed the question of whether at will employment is contractual for purposes of § 1981, and a split of authority exists within this district.[1] Compare Foster v. BJC Health System, 121 F.Supp.2d 1280 (E.D.Mo.2000) (at-will employee may maintain cause of action under § 1981); Cummings v. Mallinckrodt, No. 4:00CV660 CAS (at-will employee may state a claim under § 1981); and Morgan v. United Parcel Service, 4:94CV1184 CEJ (at-will employee may maintain a cause of action under 1981) with Nofles v. State Farm Mut. Auto. Ins. Co., 101 F.Supp.2d 805, 819-20 (E.D.Mo.2000) (at-will employment is not contractual for the purposes of § 1981 because, under Missouri law, at-will employees do not have contractual rights enforceable in the event of termination, and § 1981 depends on the existence of such contractual rights); Jones v. Becker Group of O'Fallon Div., 38 F.Supp.2d 793, 795 (E.D.Mo.1999) (at-will employee may not sue under § 1981 because Missouri law clearly dictates that an at-will employee has no contractual rights as to the terms, conditions, and duration of employment); and Blue v. Abbott Ambulance, No. *1143 4:00CV583RWS (at-will employee cannot state a claim under § 1981).
At the appellate level, however, all four circuits considering this issue have uniformly held that at will employees may sue under § 1981. Lauture v. IBM, 216 F.3d 258, 261-62 (2nd Cir.2000); Perry v. Woodward, 199 F.3d 1126, 1133 (10th Cir. 1999); Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018-19 (4th Cir.1999); Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc., 160 F.3d 1048, 1051-52 (5th Cir.1998); Cf. Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1034-35 (7th Cir.1998) (expressing doubt that an at-will employee may sue under § 1981, but declining to reach issue). The most divisive aspect of the question appears to be whether a federal court should look to the general common law of contracts or to specific state law in determining whether at-will employment is contractual. The Second and Fourth Circuits take the former approach, while the Fifth and Tenth Circuits have adopted the latter. Id.
After reviewing the myriad approaches to the issue, this Court will adopt the rationale and conclusion set forth in Foster v. BJC, supra. In that case, the court noted that most states have adopted the "at-will employment" doctrine and explained the principle as follows:
Under this doctrine, either party may terminate an employment relationship at any time and for any reason unless the parties have agreed otherwise. At-will employees have no contractual right to continued employment. See Nofles, 101 F.Supp.2d at 820. Courts and commentators have long recognized, however, that the at-will doctrine operates not as a barrier to contract formation, but as a rule of contract interpretation. [citations omitted] The at-will doctrine supplies a default term in employment contracts in which the parties have not specified the employment's duration or the reasons for which the employment may be terminated. [citations omitted]
121 F.Supp.2d at 1287. Indeed, under common-law principles, an at-will employment relationship has all the elements of a valid contract, because (among other things) an at-will employee's work is performed as consideration for the employer's promise to pay, and the employee may sue the employer for breach of contract if the employer fails to pay earned wages; consequently, most state courts recognize at will employment as contractual. 121 F.Supp.2d at 1288 (citations omitted).
The Foster court found the approach of looking at this common law to determine whether a contract exists for purposes of § 1981 to be more compelling "because it is a `settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms,'" 121 F.Supp.2d at 1287, quoting United States v. Shabani, 513 U.S. 10, 13, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994); see also Patterson v. McLean Credit Union, 491 U.S. 164, 182-82, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (Supreme Court rejected argument that the language of § 1981 requires a court to look outside the statute to the terms of the particular contract and to state law for the obligations and covenants to be protected by federal statute). This appears to be the more common sense approach, because unnecessarily subjecting a federal statutory scheme to the vagaries of differing state laws may create undue confusion about the application of the law  e.g., similarly situated at-will employees in different states being accorded different rights (or no rights) under § 1981 depending on where the employee lives and works  as well as many arguments about which state's law will apply to determine the existence of a contract. Using this common-law approach, an at-will employee such as Plaintiff may clearly maintain a cause of action under § 1981.
Although the Foster court adopted the common law approach, it noted that even if it were to look to Missouri law, the result would not differ. Recognizing that Missouri courts differentiate clearly between *1144 contractual employment and at-will employment, the court found that Missouri law also recognizes the existence of a contractual remedy for at-will employees if the employer withholds compensation and benefits previously earned  an approach that is consistent with the common law principles discussed above. 121 F.Supp.2d at 1289, citing Ley v. St. Louis County, 809 S.W.2d 734, 736 (Mo.Ct.App.1991); but see Nofles, 101 F.Supp.2d at 820 (In Missouri, an employee may not maintain a contract action when she is terminated unless she can show that she was subject to an employment contract, an essential element of which is a set duration of employment; if an at-will employee is terminated in violation of a specific statutory provision or in violation of public policy, the employee may sue for wrongful discharge, an action sounding in tort) (citing Luethans v. Washington University, 894 S.W.2d 169, 172 (Mo. banc 1995)) and Boyle v. Vista Eyewear, Inc., 700 S.W.2d 859 (Mo.Ct.App.1985). This Court concurs with the idea that, even under Missouri law, an at-will employment arrangement has the hallmarks of a contract even if it is not an actual "employment contract" (as the term is most narrowly defined by Missouri courts), and that this is sufficient to satisfy the requirements of § 1981.
The Foster court concluded by stating: In addition, I note that § 1981 liability for wrongful termination may arise out of an at-will contract just as it may arise out of any other kind of contract. Although termination of an at-will employee does not amount to a breach of contract, a § 1981 claim does not require a breach of the underlying contract. [citations omitted] Stated differently, while an employer may terminate an at-will employee for any reason or no reason, it will incur liability under § 1981 if it does so for a racially discriminatory reason. [citation omitted] Foster may therefore sue under § 1981 despite her at-will status.
121 F.Supp.2d at 1289-90. This Court agrees, and therefore denies Defendant BJC's Motion to Dismiss Plaintiff's § 1981 claim.

C. Libel
Defendant first contends that it is entitled to absolute immunity from "any type of liability deriving from its disciplinary action which qualifies as a statement in a quasi-judicial proceeding." Defendant's Motion at 2. In support of this assertion, Defendant cites Li v. Metropolitan Life Ins. Co. Inc., 955 S.W.2d 799 (Mo.Ct.App. 1997). In Li, the plaintiffs sued the defendant for libel stemming from the fact that the defendant turned certain documents over to the Missouri Department of Insurance. 955 S.W.2d at 801-02. The documents included a letter from the insurance agent to defendant, which involved a dispute between plaintiffs and the agent and which included purportedly libelous statements about plaintiffs. Defendant provided the documents to the Department of Insurance at the Department's request, as part of a Department investigation into claims filed with the Department by plaintiffs. Id.
The Missouri Court of Appeals determined that the defendant was entitled to absolute immunity in this situation, stating "[i]t is the established law of Missouri that statements made during proceedings of a judicial or quasi-judicial body are absolutely privileged if they are relevant to issues before the body." 955 S.W .2d at 803, citing Remington v. Wal-Mart Stores, Inc., 817 S.W.2d 571, 574 (Mo.Ct.App.1991) and Barchers v. Missouri Pacific Railroad Co., 669 S.W.2d 235, 238 (Mo.Ct.App.1984). In addition, "[i]n determining whether a proceeding is a quasi-judicial proceeding, the following criteria is used: whether the agency possesses traditional powers, such as being able to conduct hearings at which witnesses may be summoned and examined, subpoena documents, and hand down judgments." Id. Here, Defendant argues that because it was required by statute to submit an incident report to the State Board of Nursing, the rationale of the Li *1145 case should apply, giving Defendant absolute immunity from Plaintiff's libel claim. The Court disagrees.
A communication to a governmental agency that has the power to conduct judicial or quasi-judicial proceedings  even if the communication required by law  is not a "statement made during a judicial or quasi-judicial proceeding" unless it is actually part of a proceeding taking place within the state agency. Rockwood Bank v. Gaia, 170 F.3d 833, 839 (8th Cir.1999)(applying Missouri law). In Rockwood Bank, the Eighth Circuit determined that Missouri law does not extend absolute immunity to situations such as statements made during routine bank examinations required by law, because:
While the examinations were conducted according to law, they were not inquiries instituted after a determination that the bank may have been engaging in unsafe or unsound practices. Nor were the examinations commenced pursuant to specific complaints or requests for investigation. There was no evidence that either of the bank regulatory agencies was even contemplating the initiation of a quasi-judicial proceeding against the bank. As such, the routine examinations of Rockwood Bank by the Missouri Division of Finance and the FDIC may not even be considered preliminary steps to quasi-judicial proceedings.
170 F.3d at 839. In this case, while the incident report concerning Plaintiff may have been prepared in the course of an internal investigation or proceeding within Defendant  proceedings that are not afforded absolute immunity  there is nothing in the record to suggest that the Board of Nursing had instituted any kind of complaint, investigation, or other proceeding regarding Plaintiff. Rather, Defendant apparently forwarded the incident report to the Board of Nursing as a matter of routine compliance with state law, much like the defendant's required cooperation with the bank examiners in Rockwood Bank. Consequently, Defendant is not entitled to absolute immunity in this case.
Defendant next asks this Court to find that it is entitled to qualified immunity from Plaintiff's claim for libel. "In Missouri, qualified immunity may be available for a person who makes a statement subject to a duty to someone who has a corresponding duty." 170 F.3d at 839, citing Rice v. Hodapp, 919 S.W.2d 240, 244 (Mo. 1996); Carter v. Willert Home Products, 714 S.W.2d 506, 513 (Mo.1986). This limited type of immunity "will protect the person from liability for making false or defamatory statements if it can be shown that the comments were made without actual malice. Actual malice means `that the statements were made with the knowledge that they were false or with reckless disregard for whether they were true or false at a time when defendant had serious doubts as to whether they were true.'" 170 F.3d at 840, quoting Carter, 714 S.W.2d at 512. These principles are consistent with the statutes cited by Defendant that limit liability for compliance with health care mandatory reporting requirements. R.S.Mo. §§ 383.133(4) and 335.066(6).
With respect to Defendant's Motion to Dismiss, Defendant has not shown that Plaintiff failed to plead the necessary elements to preserve her libel claim. Nor has Defendant shown that Plaintiff cannot, as a matter of law, maintain an action for libel. Defendant attempts to argue that good faith is established as a matter of law because the incident report was prepared after a grievance hearing in front of a neutral panel, but the only factual support Defendant offers for that contention is the very document on which Plaintiff's libel claim is based  the incident report  simply because it was incorporated into Plaintiff's pleading. See, e.g., Defendant's Reply at 8. The Court will not, however, engage in the convolutions of circular logic required to construe the incorporation of that document into Plaintiff's Complaint to be an admission of any kind against Plaintiff's own interest, especially since the document itself forms the basis for her libel claim. Plaintiff's libel claim, consequently, *1146 survives a Motion to Dismiss, and because Defendant's alternative Motion for Summary Judgment is extremely premature on the record before this Court, the Court will deny the alternative request for relief without prejudice.

IV. CONCLUSION
Accordingly,
IT IS HEREBY ORDERED that the Motion of Defendant BJC to Dismiss is GRANTED ONLY AS TO COUNTS II AND III OF PLAINTIFF'S COMPLAINT; [23-1] and
IT IS FURTHER ORDERED that an appropriate Order of Dismissal as to Counts II and III will accompany this Memorandum and Order; and
IT IS FURTHER ORDERED that the Alternative Motion of Defendant BJC for Summary Judgment is denied without prejudice. [23-2]
NOTES
[1] The Eighth Circuit has recently noted that "Whether an at-will employee may maintain a § 1981 claim is a matter of first impression in this circuit. For those circuits which have addressed the issue, the resounding view is that an at-will employee has a cause of action under § 1981 for discrimination occurring in the employment relationship." Bogren v. State of Minnesota et al., 236 F.3d 399, 408 (8th Cir.2000) (declining to reach issue because claim failed on other grounds).